**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3894-21

FRANK HOLTHAM, JR., (as
Successor Personal
Representative for the Estate
of Frank Holtham, Sr. and
Derivatively on Behalf of
CP&F Realty, LLC),

    Plaintiff-Appellant,

v.

CATHERINE A. HOLTHAM
(as purported current Manager
for CP&F Realty, LLC, as
co-Personal Representative
for the Estate of Patricia D.
Holtham and Individually)
and PATRICIA M. HOLTHAM
(as co-Personal Representative
for the Estate of Patricia D.
Holtham and Individually),

    Defendants-Respondents.

_____

Argued January 9, 2024 – Decided August 22, 2024

Before Judges Gooden Brown and Puglisi.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. C-000056-22.

Mark E. Critchley argued the cause for appellant (Brach Eichler LLC, attorneys; Bob Kasolas and Mark E. Critchley, on the briefs).

Alexandra V. Gallo argued the cause for respondents Catherine A. Holtham and Patricia M. Holtham (O'Toole Scrivo, LLC, attorneys; Alexandra V. Gallo, of counsel and on the brief; Joseph R. Marsico, on the brief).

PER CURIAM

Plaintiff Frank Holtham, Jr., in his capacity as successor personal representative (SPR) for the Estate of Frank Holtham, Sr., and derivatively on behalf of CP&F Realty, LLC (CP&F Realty), appeal from a July 8, 2022, Chancery Division order dismissing his complaint without prejudice against defendants Catherine A. Holtham (Cathy),[1] as co-Personal Representative for the Estate of Patricia D. Holtham and sole manager of CP&F Realty, and Patricia (Patty) M. Holtham, as co-Personal Representative for the Estate of Patricia D. Holtham. Plaintiff also appeals from the July 27, 2022, order granting

---

[1] Because of the common surname, we use first names to avoid confusion and intend no disrespect.

defendants' motion to seal portions of the record pursuant to Rule 1:38-11.  We affirm.

## I.

We glean these facts from the motion record.  Frank, Jr., Cathy, and Patty are the children of Frank, Sr. and Patricia, who are now both deceased.  During their lifetime, Frank, Sr. and Patricia owned and operated two automobile dealerships, Glen Motors, Inc. (Glen Motors) and Toyota of Hackensack.  Generally, their ownership interests in the businesses were split sixty percent to Frank, Sr., and forty percent to Patricia.

In 1998, Frank, Sr. sold Toyota of Hackensack to Frank, Jr.  In 2004, Frank, Sr. decided to buy property in Glen Rock (the Glen Rock property) to use as a service center for Glen Motors and asked Frank, Jr. to perform the closing.  In 2006, Frank, Jr. deeded the Glen Rock property to CP&F Realty, claiming that he acted at Frank Sr.'s behest.  However, CP&F Realty was an LLC owned equally by the three children and managed by Frank, Jr., and in a subsequent certification, Cathy averred that no one in the family was aware that Frank, Jr. had deeded the Glen Rock property to CP&F Realty and not directly to Frank, Sr. and Patricia as 60/40 owners.

A-3894-21

Frank, Sr. passed away on January 29, 2010, while he and Patricia were residents of Florida. Frank, Sr.'s will was admitted to probate in Sarasota County, Florida, on March 31, 2010. Pursuant to Frank, Sr.'s will, Patricia was appointed personal representative of Frank, Sr.'s Estate and was issued Letters of Administration. Frank, Jr. was named as the SPR. The will also nominated Patricia and Frank, Jr. to serve "as [c]o-Trustees of any trust created under [the will] for the benefit of [Patricia]." It nominated Cathy to serve if any of the trustees died or became incapacitated, and Patty "to serve as [s]uccessor [c]o-Trustee" in the event of Cathy's incapacitation. For all other trusts, the will nominated Frank, Jr., Cathy, and Patty to serve as co-Trustees.

Within the will, Frank, Sr. created two trusts, the "Family Part" and the "Spouse's Part." The Spouse's Part consisted of all assets that qualified for the marital deduction, and the Family Part consisted of the residuary estate. Despite the fact that on July 12, 2012, the Sarasota County probate court found that Frank, Sr.'s estate had been "fully administered and properly distributed" and discharged Patricia as personal representative, during the ensuing years, disagreements arose in the family regarding the administration of the estate and the ownership and distribution of assets. For example, Frank, Jr. believed he was the only trustee with the power to make distributions from the Family Part

A-3894-21

trust. On the other hand, defendants believed the will granted Patricia a testamentary power of appointment (POA) so that she could direct the assets and "pay over, transfer, convey, assign and administer upon such estates," including any property held in trust by Frank, Sr.'s estate.

As a result of these family disagreements, in 2014, Cathy, Patty, Patricia, and Glen Motors sued Frank, Jr., alleging that he had "been stealing from Glen Motors," which he managed, and "diverting money to Toyota of Hackensack and to himself personally." To resolve the lawsuit, in February 2015, a settlement agreement was entered by the parties, which agreement was supplemented on March 30, 2015 (collectively, the 2015 settlement agreement). Among the terms of the settlement, the parties agreed to confidentiality based on "legitimate business interests," and included limitations on the disclosure of the settlement terms. The agreement also required the Glen Rock property to be split, sixty percent to Frank, Sr.'s estate and forty percent to Patricia. In addition, the agreement specified that Frank, Jr., Patricia, Patty, and Cathy had "the right of first refusal at fair market value if another party want[ed] to sell their respective dealership interest" in order to ensure that both dealerships stayed in the family. As such, the agreement required the parties to send each other written notice if there was to be a sale.

5

The lawsuit prompted Patricia, Cathy, and Patty to draft a new operating agreement for CP&F Realty. Under the operating agreement adopted when the company was formed, Frank, Jr., Cathy, and Patty each had a 33.3% membership interest, and Frank, Jr. was the sole manager. However, on December 22, 2015, a new operating agreement was issued stating that CP&F Realty's only members were the estate of Frank, Sr. with a sixty percent ownership interest and Patricia with a forty percent ownership interest. The new operating agreement also specified that the preceding operating agreement "was never binding" on the company or its members, that Frank, Jr. "ha[d] since acknowledged that he [was] not a member of [CP&F Realty]," and that going forward, its manager would be Cathy. Patricia executed the new operating agreement in both her personal capacity and as personal representative of Frank, Sr.'s estate.

The family disputes continued and largely revolved around the ownership of CP&F Realty and Glen Motors as those were the most valuable assets in Frank, Sr.'s estate. In 2015 and 2016, certain real estate transactions were consummated that led to further disagreements between the parties. Frank, Jr. claimed that on December 30, 2015, Cathy in her capacity as manager of CP&F Realty, sold the Glen Rock property to a third party for $4 million and that he never received notice of the sale. He claimed this was a violation of his right of

A-3894-21

first refusal encompassed in the 2015 settlement agreement. Frank, Jr. also claimed that on June 24, 2016, CP&F Realty bought property located at 19-01 Pollitt Drive in Fair Lawn (the Pollitt Property) for $4.4 million from PAC Management LLC (PAC). He asserted the purchase was a fraud upon CP&F Realty and himself because "PAC does not readily appear to have had any legitimate or justifiable business or legal reason to sell the [Pollitt Property] to CP&F [Realty], and/or to incur the corresponding additional realty transfer taxes and fees associated with that transaction." Additionally, Frank, Jr. claimed that on December 21, 2016, Patricia "fraudulently" sold a sixty percent interest in Glen Motors to Cathy and Patty "in exchange for promissory notes." He claimed he never received notice about the purchase in violation of the 2015 Settlement Agreement and his right of first refusal. Frank, Jr. also asserted Patricia never deposited the promissory note payments into Frank, Sr.'s estate as required.

In 2020, Patricia petitioned to reopen Frank Sr.'s estate. On November 23, 2020, the Sarasota Circuit court granted the petition, reinstated Patricia's Letters of Administration, and ordered the estate reopened "for the purposes of allowing the Personal Representative to marshal the assets [and] distribute the assets" in accordance with Frank, Sr.'s will and the prior orders of the court. On February 5, 2021, Patricia filed a petition for discharge and a First and Final

A-3894-21

Accounting of the Estate. As part of her petition, Patricia set forth a plan of distribution directing all assets remaining in Frank, Sr.'s estate, including the sixty percent stake in CP&F Realty, to be moved into trust in accordance with Frank, Sr.'s will. On March 5, 2021, Frank, Jr. filed objections to the accounting of Frank, Sr.'s estate, generally objecting to Patricia's "administration of the Trust's assets . . . for . . . eight years" since her discharge on July 12, 2012, "without his knowledge, participation, or consent." Among his specific objections, Frank, Jr. stated the sale of the Glen Rock property for $4 million should have been accounted for by CP&F Realty, but instead was valued on the Final Accounting at "its initial carrying value of $328,000 as of [December 31, 2020]." Frank Jr. also objected to the sale of the sixty percent interest of Glen Motors, arguing it was "far below market value" and the sale required "his knowledge or consent as co-trustee" of the trust holding CP&F Realty.

Prior to the estate being closed, Patricia passed away on April 7, 2021. In Patricia's will, she appointed Cathy and Patty as her co-Personal Representatives. In the will, she also exercised her "powers of appointment given" in Frank, Sr.'s will and directed that "all assets" subject to those powers of appointment be distributed to the Patricia D. Holtham Revocable Trust Agreement (Patricia's Trust). The will also directed "the rest, residue and

remainder" of Patricia's assets to go into Patricia's Trust, of which Cathy and Patty were the beneficiaries. As part of the will and Patricia's trust, Cathy and Patty also received Patricia's forty percent interest in CP&F Realty in equal parts.

After Patricia's death, the parties continued to engage in extensive litigation in both Florida and New Jersey. On June 11, 2021, Frank, Jr. filed a complaint and order to show cause in the Law Division against Cathy, Patty, PAC, Patricia's estate, and nominal defendants, including Glen Motors and CP&F Realty, seeking temporary restraints and alleging breach of the 2015 settlement agreement, conversion, and fraud. While litigating the June 11, 2021, complaint, Frank, Jr. petitioned the Sarasota County probate court to be appointed SPR of Frank Sr.'s estate. The petition was granted on December 29, 2021. Defendants appealed the determination, and the appeal is currently pending.

On January 18, 2022, defendants petitioned the Sarasota Circuit court to compel distributions from Patricia's Trust. Defendants claimed because Frank, Sr.'s will had granted Patricia powers of appointment (POA), and Patricia had exercised the POA to transfer the assets to Patricia's Trust, the assets, including the sixty percent stake in CP&F Realty, were no longer part of Frank, Sr.'s estate

or Patricia's estate, were not assets subject to control by any fiduciary of Frank, Sr.'s estate, and should be distributed accordingly.

In February 2022, Frank Jr. opposed the petition by filing an answer and a counter-petition, arguing that there was still an "actual, presently existing, and justiciable controversy" between the parties. He claimed that although Patricia had a POA over the assets and property in the Family Part Trust of Frank, Sr.'s estate, if she had used the power properly, it would have resulted in the division of equal shares of the assets in the trust among all three siblings. However, Frank, Jr. asserted that the Family Part Trust has never been funded by Patricia with any assets, including the sixty percent interests in Glen Motors and CP&F Realty. Therefore, Frank stated the trust could not be "retroactively funded" with the assets, and "there is a bona fide, actual, present and practical need for a declaration of the effectiveness of the exercise of the [POA] by [Patricia] and the parties' rights under the Family Part Trust." The effectiveness of the exercise of the POA to distribute Frank, Sr.'s estate assets and the construction of Frank, Sr.'s will are still under consideration by the Sarasota Circuit court.

During the pendency of the Sarasota Circuit court litigation, on May 7, 2021, Glen Motors sued Frank, Jr. and various entities under his control in the Law Division for failing to make payments to Glen Motors on a promissory note

as required by the 2015 settlement agreement. Shortly thereafter, on June 11, 2021, Frank, Jr. filed a complaint in the Law Division against Patricia's estate, Cathy, Patty, and nominal defendants, including Glen Motors and CP&F Realty, claiming the sale of the Glen Rock property and the sale of Frank, Sr.'s sixty percent Glen Motors interest violated his right of first refusal encompassed in the 2015 settlement agreement. The complaint alleged breach of contract, breach of implied covenants of good faith and fair dealing, unjust enrichment, equitable fraud and fraud in the inducement, wrongful conversion of assets, tortious interference with prospective economic advantage and contractual relations, and promissory estoppel. Frank, Jr. requested specific performance of his right of first refusal to the sales of the Glen Motors and CP&F Realty interests to Cathy and Patty and sought an order compelling Cathy and Patty to transfer title of the interests to him at the same price they paid.

On June 29, 2021, the two Law Division actions were consolidated, and the litigation is still ongoing. On December 9, 2021, the Law Division judge ordered the 2015 settlement agreement sealed and redacted from the record, as it was attached as an exhibit to Frank, Jr.'s complaint.

On March 28, 2022, Frank, Jr. filed the complaint that is the subject of this appeal in the Chancery Division. Frank, Jr., brought the action directly in

11

his capacity as SPR of Frank, Sr.'s estate, and derivatively as an oppressed member action on behalf of CP&F Realty, of which he argued Frank, Sr.'s estate was a sixty percent majority owner. In the complaint, Frank, Jr. alleged that Patricia's Estate and Cathy had breached CP&F Realty's amended operating agreement, breached their fiduciary duty of care and loyalty to Frank, Sr.'s estate by, among other things, failing to appoint counsel to represent CP&F Realty in the Law Division action, converted Glen Rock property sale proceeds, and unjustly enriched themselves. Frank, Jr. requested the removal of Cathy as manager of CP&F Realty, appointment of Frank, Jr. as the new manager, dissolution of CP&F Realty or appointment of a provisional director or custodian in the alternative, inspection of all CP&F Realty's financial records, and imposition of a constructive trust for Frank, Sr.'s estate and CP&F Realty.

Frank, Jr. also sought an order to show cause with temporary restraints, primarily seeking to temporarily enjoin Cathy from acting as the manager of CP&F Realty and from engaging in financial transactions on CP&F Realty's behalf. Frank, Jr. also sought an order directing Cathy to turn over all financial records of CP&F Realty for a full accounting. On April 20, 2022, following a hearing during which defendants opposed the application, the judge declined to impose temporary restraints. In an oral opinion, the judge determined plaintiff

did not meet the standard for temporary restraints under <u>Crowe v. De Gioia</u>, 90 N.J. 126, 132-34 (1981).

On June 1, 2022, the return date of the order to show cause, the judge held a hearing on Frank, Jr.'s application for a preliminary injunction and other relief. During the hearing, relying on his Florida counsel's certification, Frank, Jr. argued that a decision by the Sarasota Circuit court on the POA was "not getting resolved soon." He urged that he was currently a sixty percent member of CP&F Realty as successive personal representative of Frank, Sr.'s estate and had the statutory authority to remove Cathy as manager and inspect the financial records.

In an order issued the same day, the judge rejected Frank, Jr.'s contentions and denied the application. In an oral opinion, the judge found "no immediate and irreparable harm; no well-settled legal right; no reasonable probability of success on the merits," and "no hardship to Frank, Jr." in denying an injunction. The judge explained:

> As I see it, the issue in this case is governed by the determination of the court in Florida as to whether the exercise of the power of appointment of Patricia . . . with respect to CP&F [Realty] was proper. That matter is pending in front of a court or courts in Florida. It has not been decided. And when it will be decided is certainly open to question. I do agree . . . that it's not likely to happen any time soon.

13

. . . [U]ntil that matter is determined, then the ultimate beneficiaries of CP&F [Realty] are unknown. Yes, as of this moment, [Frank, Jr.] is the representative of the Estate of [Frank, Sr.]. And the estate purportedly owns a [sixty] percent interest in CP&F [Realty]. The difficulty with that is, what does that mean in this context? At best, Frank, Jr., owns [twenty] percent of CP&F [Realty]. He cannot do any better than [twenty] percent. The defendants cannot do any worse than [eighty] percent of CP&F [Realty]. And may in fact own 100 percent of CP&F [Realty].

Until that issue gets determined, this requested relief is . . . premature.

On June 10, 2022, defendants moved to dismiss Frank Jr.'s complaint pursuant to Rule 4:6-2(e) and to seal the 2015 settlement agreement. Following oral argument conducted on July 8, 2022, the judge granted both motions. The judge noted that although he was not bound by the Law Division judge's sealing order, declining to seal the record would "essentially undo[]" the prior order, and would be "inconsistent," "untenable," and "unworkable." Additionally, the judge pointed out that "the parties [had] in fact agreed to a confidentiality agreement." As such, the judge sealed the portions of the record disclosing the contents of the 2015 settlement agreement.

Turning to the motion to dismiss, the judge found there was "an issue of ripeness" due to the ongoing Florida litigation. The judge explained:

14

And if I think there[ is] an issue of ripeness, then I have to apply, is this fit for judicial review today and what are the hardships if the review is withheld. . . . There is no . . . hardship to Frank, Jr.[] today if judicial review is withheld, assuming that I dismiss without prejudice. He has whatever claims he may have. He can pursue those claims once this issue in Florida is fully and finally resolved.

Accordingly, the judge dismissed the complaint without prejudice. After the ruling, Frank, Jr. asked for clarification as to whether the estate of Frank, Sr. would experience any hardship inasmuch as Frank, Jr. was bringing the claims on behalf of the estate in his capacity as the successive personal representative. The judge found that there were no hardships to the estate, explaining:

I do[ not] think it[ is] a hardship to Frank, Jr., nor do I think it[ is] a hardship to Frank, Sr.'s[] Estate. . . . With respect to the issue of Frank, Sr.'s[] Estate, the beneficiaries of that estate, Frank, Jr., may be the current personal representative. If he remains that and if the courts down there determine . . . the ownership, I do[ not] think there[ is] any harm to Frank, Sr.'s[] Estate. Those claims will remain in effect as well.

You[ have] got competing interests here. You[ have] got Frank, Jr. . . . . trying to exercise rights that are not really at the end of the day or very well may not be for his benefit. And I still do[ not] think there[ is] a hardship -- I do not believe there[ is] a hardship either to Frank, Jr., or to Frank, Sr.

The judge issued an order granting defendants' motion to dismiss the complaint without prejudice on July 8, 2022, and issued an order sealing the 2015 settlement agreement on July 27, 2022.  This appeal followed.

II.

On appeal, Frank, Jr. argues his claims are ripe because he currently has standing as SPR of Frank, Sr.'s estate, which is a sixty percent interest holder in CP&F Realty, and he has a fiduciary duty to protect the estate's assets.  Frank, Jr. claims Cathy is mismanaging CP&F Realty and will continue to mismanage the company if she is not replaced as manager or if he is not allowed to inspect the company's financial records in his capacity as SPR.  As evidence of Cathy's mismanagement of CP&F Realty, he cites her failure to hire disinterested counsel to represent CP&F Realty in the Law Division action.  He argues "[t]he status of the ongoing Florida litigation[ is] . . . irrelevant" and "cannot negate Frank[,] Sr.'s Estate's standing and unrebutted statutory authority" as "a New Jersey LLC member under the [Revised Uniform Limited Liability Company Act (RULLCA)]."  See N.J.S.A. 42:2C-1 to -94.

Our review of a dismissal for failure to state a claim pursuant to Rule 4:6-2(e) is de novo and we owe "no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237

16

N.J. 91, 108 (2019).  Our inquiry "is limited to 'examining the legal sufficiency of the facts alleged on the face of the complaint,'" State v. Cherry Hill Mitsubishi, Inc., 439 N.J. Super. 462, 467 (App. Div. 2015) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)), "giving the plaintiff the benefit of 'every reasonable inference of fact,'" Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (quoting Dimitrakopoulos, 237 N.J. at 107).

The test for determining the adequacy of a pleading is "whether a cause of action is 'suggested' by the facts," Printing Mart-Morristown, 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)), and "'whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary,'" Baskin, 246 N.J. at 171 (quoting Printing Mart-Morristown, 116 N.J. at 746). "If the court considers evidence beyond the pleadings in a Rule 4:6-2(e) motion, that motion becomes a motion for summary judgment, and the court applies the standard of Rule 4:46." Dimitrakopoulos, 237 N.J. at 107. "Ordinarily, dismissal for failure to state a claim is without prejudice, and the court has discretion to permit a party to amend the pleading to allege additional facts in

an effort to state a claim." Cona v. Twp. of Wash., 456 N.J. Super. 197, 214 (App. Div. 2018).

The outcome of this appeal turns on the application of the ripeness doctrine. The purpose of the ripeness doctrine is to avoid premature adjudication of abstract disagreements. House of Fire Christian Church v. Zoning Bd. of Adjustment, 379 N.J. Super. 526, 547 (App. Div. 2005). "A case's ripeness depends on two factors: (1) the fitness of issues for judicial review and (2) the hardship to the parties if judicial review is withheld at this time." Comm. to Recall Robert Menendez From the Off. of U.S. Senator v. Wells, 204 N.J. 79, 99 (2010) (internal quotation marks omitted) (quoting K. Hovnanian Cos. of N. Cent. Jersey, Inc. v. N.J. Dep't of Env't Prot., 379 N.J. Super. 1, 9 (App. Div. 2005)). When "[t]he issues in dispute are 'purely legal,'" the case is fit for judicial resolution "without developing additional facts." Ibid. (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 149 (1967)).

"A claim is not ripe for adjudication if it rests upon '"contingent future events that may not occur as anticipated, or indeed may not occur at all."'" Texas v. U.S., 523 U.S. 296, 300 (1998) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81 (1985)). "'[P]ostponing consideration of questions presented, until a more concrete controversy arises, also has the

advantage of permitting the . . . courts further opportunity to construe'" the issues before it. Ibid. (quoting Renne v. Geary, 501 U.S. 312, 323 (1991)). "[C]ourts can assume jurisdiction over a claim only if there is a 'real and immediate' threat of enforcement or harm that would affect the plaintiff." Garden State Equality v. Dow, 434 N.J. Super. 163, 189 (Law Div. 2013) (quoting K. Hovnanian, 379 N.J. Super. at 10); see Platkin v. Smith & Wesson Sales Co., 474 N.J. Super. 476, 496 (App. Div. 2023) ("Such claims are ripe for adjudication 'only when there is an actual controversy, meaning the facts present "concrete contested issues conclusively affecting" the parties' adverse interests.'" (quoting In re Firemen's Ass'n Obligation, 230 N.J. 258, 275 (2017))).

Here, we agree with the judge's application of the ripeness doctrine. First, although it is undisputed that Frank, Jr. is currently the SPR of Frank, Sr.'s estate, it is unclear whether the estate is still an owner of CP&F Realty. In the Florida litigation, defendants argued in the petition to compel distributions that during her lifetime, Patricia exercised the POA given to her by Frank, Sr.'s will and transferred all assets in his estate into Patricia's Trust. If defendants' argument prevails, there would be no assets in Frank, Sr.'s estate and he would

be a zero percent owner of CP&F Realty. His estate would be closed, and Cathy and Patty would be one hundred percent owners of CP&F Realty.

In contrast, in his counterpetition, Frank, Jr. asserted that Patricia's exercise of the POA was ineffective to appoint assets in Frank, Sr.'s estate and that she was therefore unable to properly transfer the assets to defendants. He asked the Sarasota Circuit court to construe Frank, Sr.'s will to determine what was left in Frank, Sr.'s estate. Because the Sarasota Circuit court must determine who holds ownership interests in CP&F Realty and whether Frank, Sr.'s estate is a majority owner of the company, there are contingent future events and significant factual developments that must occur prior to any determinations on the merits.

Second, there is no hardship or immediate threat of harm that would affect Frank, Jr. or Frank, Sr.'s estate. There is no credible evidence in the record that defendants are engaging in any activities that would jeopardize or harm CP&F Realty, particularly considering they may one day become owners of the company. If the Florida courts determine otherwise, Frank, Jr. may file claims individually against defendants, or potentially derivatively on behalf of Frank, Sr.'s estate if it is determined the assets are still in the estate. Thus, we agree with the judge that if we make any determination at this juncture, it would be a

20

"'premature adjudication' which would entangle [this court] in 'abstract disagreements.'" Platkin, 474 N.J. Super. at 496 (quoting Firemen's Ass'n, 230 N.J. at 275). We therefore decline to decide whether Frank, Jr. has standing as SPR or in his individual capacity to bring these claims until the Florida courts determine the ownership status of CP&F Realty.

Although Frank, Jr. contends that as SPR, he currently has standing as a majority owner of CP&F Realty, he is effectively urging this court to make a potentially adverse ruling prior to the Sarasota Circuit court ruling. However,

> "New Jersey has long adhered to 'the general rule that the court which first acquires jurisdiction has precedence in the absence of special equities.'" Sensient Colors Inc. v. Allstate Ins. Co., 193 N.J. 373, 386 (2008) (quoting Yancoskie v. Del. River Port Auth., 78 N.J. 321, 324 (1978)). "Under the first-filed rule, a New Jersey state court ordinarily will stay or dismiss a civil action in deference to an already pending, substantially similar lawsuit in another state, unless compelling reasons dictate that it retain jurisdiction." Ibid. (citing O'Loughlin v. O'Loughlin, 6 N.J. 170, 179 (1951)).
>
> [Platkin, 474 N.J. Super. at 487.]

Compelling reasons often include when

> [(1)] one party has engaged in jurisdiction shopping to deny the other party the benefit of its natural forum. . . . [(2)] a party acting in bad faith has filed first "in anticipation of the opposing party's imminent

21

suit in another, less favorable, forum."  [EEOC v. Univ. of Pa., 850 F.2d 969, 976 (3d Cir. 1988).]

. . . .

. . . [(3)] significant state interests . . . are implicated, and when deferring to a proceeding in another jurisdiction "would contravene the public or judicial policy" of the forum state, City of Philadelphia v. Austin, 86 N.J. 55, 64 (1981).

. . . [(4)] it would cause "great hardship and inconvenience" to one party by proceeding in the first-filed action and no unfairness to the opposing party by proceeding in the second-filed action.  See [O'Loughlin, 6 N.J. at 180].

[Sensient Colors Inc., 193 N.J. at 387-89 (citations omitted).]

The question is not "whether a state court has the power to exercise jurisdiction over a case filed within its jurisdiction, but whether the court should restrain itself and not exercise that power."  Id. at 386-87 (citing O'Loughlin, 6 N.J. at 179).

The Florida litigation has been ongoing since 2020, when Patricia petitioned to reopen Frank, Sr.'s estate.  This matter began on March 28, 2022, when Frank, Jr. filed a complaint in the Law Division.  There are no compelling reasons for this court to render a decision on the ownership of CP&F Realty until the Florida courts make their rulings.  No forum shopping has occurred, as

22

the estates of both Frank, Sr. and Patricia are squarely in Florida's jurisdiction. Further, Patricia's petition to reopen Frank, Sr.'s estate and defendants' petition to compel distribution of assets were not made in bad faith. Additionally, no state interests are implicated and there are no hardships to Frank, Jr. or Frank, Sr.'s estate. Therefore, we agree with the judge's decision to dismiss the complaint without prejudice so the Florida courts may proceed unencumbered by potentially adverse rulings in New Jersey.

Frank, Jr. also argues "[d]efendants failed to establish good cause warranting the sealing of the [2015 settlement agreement]." He asserts "[d]efendants failed to demonstrate any cognizable injury from disclosure of the [agreement]," failed to identify anything "confidential in the [agreement]," such as "trade secrets or proprietary information," cannot show how "disclosure . . . will . . . affect the valuation of the businesses," and have not overcome the presumption "favoring public inspection of court records."

Decisions to seal the record are within the trial court's discretion. Hammock by Hammock v. Hoffmann-LaRoche, Inc., 142 N.J. 356, 380 (1995). Rule 1:38-11 provides that information in a court record may be sealed for "good cause." "The moving party shall bear the burden of proving by a preponderance of the evidence that good cause exists," by showing:

23

(1) Disclosure will likely cause a clearly defined and serious injury to any person or entity; and

(2) The person's or entity's interest in privacy substantially outweighs the presumption that all court and administrative records are open for public inspection pursuant to [Rule] 1:38.

[Rule 1:38-11(a), (b)].

During the April 20, 2022, hearing for temporary restraints, in relation to the 2015 settlement agreement, defense counsel argued:

[T]he parties put in a confidentiality provision because they did[ not] want the family's dirty laundry being aired, because these are dealerships that are very valuable. [Frank, Jr.] does run a competing business. And they did not want other dealerships to know what was going on between and amongst them in the event of a sale of one of these enterprises. So they bargained for that. It[ is] a provision of the agreement. The parties decided amongst themselves that they would keep the settlement confidential.

During the July 8, 2022, hearing, to support defendants' motion to seal the record, defense counsel pointed out that the judge in the concurrent Law Division matter had found good cause to seal the 2015 settlement agreement because "the parties [had] attempted to protect confidential and proprietary information by virtue of including the confidentiality provision of the settlement agreement." We discern no abuse of discretion in the judge's decision to grant

the motion to seal the records given the parties' confidentiality provision in the agreement and the judge's decision in the concurrent Law Division action.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3894-21